IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

ROBERT LYLE,

       Plaintiff,                           Case No. 3:14-cv-123

  vs.

COMMISSIONER OF                        District Judge Walter H. Rice
SOCIAL SECURITY,                 Magistrate Judge Michael J. Newman

       Defendant.

---

**REPORT AND RECOMMENDATION[1]  THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS CASE BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

---

This is a Social Security disability benefits appeal.   At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Supplemental Security Income ("SSI").   This case is before the Court upon Plaintiff's Statement of Errors (doc. 10), the Commissioner's memorandum in opposition (doc. 13), Plaintiff's reply (doc. 14), the administrative record (doc. 6),[2] and the record as a whole.

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2]  Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

# I.

## A.    Procedural History

Plaintiff filed for SSI on October 19, 2010.  PageID 235-41.   Plaintiff suffers from a number of impairments including, among others, bipolar disorder and degenerative disc disease. PageID 78.

After initial denials of his application, Plaintiff received a hearing before ALJ Mary F. Withum.  PageID 97-126.  The ALJ issued a written decision on December 26, 2012 finding Plaintiff not disabled.   PageID 76-88.   Specifically, the ALJ's findings were as follows:

1.    The claimant has not engaged in substantial gainful activity since October 19, 2010, the application date (20 CFR 416.971 *et seq.*).

2.    The claimant has the following severe impairments: degenerative disc disease with chronic back pain, bipolar disorder, anxiety disorder (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform medium work as defined in 20 CFR 416.967(c)[2] except the claimant can never climb ladders, ropes or scaffolds and must avoid all exposure to unprotected heights. The claimant can frequently stoop, crouch, kneel, and crawl. The claimant's work is limited to simple, routine, and repetitive tasks

---

   [2] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements.  20 C.F.R. § 416.967.  Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  *Id.* § 416.967(c).  An individual who can perform medium work is presumed also able to perform light and sedentary work.  *Id.*  Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.* § 416.967(b).  An individual who can perform light work is presumed also able to perform sedentary work. *Id.*  Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 416.967(a).

in an environment free of fast-paced production requirements. The claimant must be employed in a low stress job with only occasional decision making and only occasional changes in [the] work setting. The claimant can occasionally interact with the public, coworkers, and supervisors.

5. The claimant is capable of performing past relevant work as a[n] office cleaner and general laborer. This work does not require the performance of work related activities precluded by the claimant's [RFC] (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since October 19, 2010, the date the application was filed (20 CFR 416.920(f)).

PageID 78-88.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's nondisability finding the final administrative decision of the Commissioner.  PageID 66-68. Plaintiff then filed this timely appeal.  *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

**B.  Evidence of Record**

In her decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case.  PageID 82-85.  Plaintiff, in his Statement of Errors, and the Commissioner, in response, also summarize the evidence of record.  Doc. 10 at PageID 1644-47; doc. 13 at PageID 1667-72.  Accordingly, except as otherwise noted in this Report and Recommendation, the undersigned incorporates the ALJ's recitation of the evidence as well as the parties' summaries of the evidentiary record.  Where applicable, the Court will identify the medical evidence relevant to this decision.

3

## II.

### A.    Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria.   42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007).   In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).   When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled.   *Id.   Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).   Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference."   *Id.* at 773 (brackets added).

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).   Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B.    "Disability" Defined

To qualify for disability benefits, a claimant must be under a "disability" as defined by the

Social Security Act.   42 U.S.C. § 1382c(a)(3)(A).   Narrowed to its statutory meaning, a

"disability" includes physical and/or mental impairments that are "medically determinable";

expected to result in death or which have lasted or can be expected to last for a continuous period

of not less than twelve months; and severe enough to prevent a claimant from (1) performing his or

her past job and (2) engaging in "substantial gainful work" that is available in the regional or

national economies.   *Id*. §§ 1382c(a)(3)(A), (B).

      Administrative regulations require a five-step sequential evaluation for disability

determinations.   20 C.F.R. § 416.920(a)(4).   Although a dispositive finding at any step ends the

ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential

review poses five questions:

1.     Has the claimant engaged in substantial gainful activity?

2.     Does the claimant suffer from one or more severe impairments?

3.     Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4.     Considering the claimant's RFC, can he or she perform his or her past relevant work?

5.     Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 416.920(a)(4); *see also Miller v. Comm'r of Soc. Sec*., 181 F.Supp.2d 816, 818 (S.D.

Ohio 2001).   A claimant bears the ultimate burden of establishing that he or she is disabled under

the Social Security Act's definition.   *Key v. Comm'r of Soc. Sec*., 109 F.3d 270, 274 (6th Cir.

1997).

### III.

In his Statement of Errors, Plaintiff argues that the ALJ erred by failing to properly evaluate: (1) the opinion of his treating psychiatrist, Mahmood Rahman, M.D.; and (2) his credibility concerning complaints of disabling symptoms.  Doc. 10 at PageID 1648-58. These arguments are addressed in turn.

### A.    Treating Source Opinion

"[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]"  *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013).  Treating physicians and psychologists top the hierarchy.  *Id.*  "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once."  *Id.*  "[N]on-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions."  *Id.*  "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker."  *Id.* (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

"An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 385 (6th Cir. 2013) (citation omitted) (alterations in original).   This requirement is known as the "treating physician" rule.  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citations omitted).  Greater deference is given to treating source opinions "since these sources are likely to be the medical professionals most able to provide a

6

detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]"  20 C.F.R. § 416.927(c)(2); *see also Blakely*, 581 F.3d at 406.   An ALJ must give controlling weight to a treating source's opinion if the ALJ finds it well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion."  *Blakely*, 581 F.3d at 406-07.   "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Id.*   Thus, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."  *Id*. at 406; *see also* 20 C.F.R. § 416.927(c).[3]   Unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions according to [these] factors, regardless of their source[.]"  *Walton v. Comm'r of Soc.*

---

[3]  In essence, "opinions of a treating source . . . must be analyzed under a two-step process, with care being taken not to conflate the steps."  *Cadle v. Comm'r of Soc. Sec.*, No. 5:12 CV 3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013).   Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if . . . the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 416.927.   *Id.*

*Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

An ALJ is not required to accept a physician's conclusion that his or her patient is "unemployable."   Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a treating physician's opinion -- that his or her patient is disabled -- is not "give[n] any special significance."   20 C.F.R. § 416.927; *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (stating that "[t]he determination of disability is ultimately the prerogative of the Commissioner, not the treating physician"). However, "[t]here remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference."   *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

Here, in October 2010, Dr. Rahman opined that Plaintiff is "markedly" impaired in thirteen areas of mental functioning, and "moderately" impaired in the remaining six areas.[4]   PageID 345. Notably, "moderate" functional limitations are "non-disabling," *see Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011), whereas "marked" and "extreme" limitations are suggestive of disability.   *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C), *et seq*. Subsequently, in December 2010 and May 2011, Dr. Rahman opined that Plaintiff is "unable to work [with] stress."   PageID 391, 436.

The ALJ accorded "little weight" to Dr. Rahman's opinions, noting that they "are not consistent with the other medical evidence and opinions in the record."   PageID 85.   Specifically, the ALJ pointed to findings of Devinder Yakhmi, M.D. -- Plaintiff's treating physician -- who noted that Plaintiff has "fair" impulse control and stress management skills; is not a danger to himself or others; and is "able to focus[.]"   PageID 734-36.   The ALJ also found Plaintiff's reported daily activities -- watching and playing with his children, walking to his friend's house,

---

[4]   Dr. Rahman did not indicate if Plaintiff is limited in his ability to complete a normal workday without interruption from psychologically-based symptoms.   PageID 345.

and watching television -- inconsistent with Dr. Rahman's opinions.  PageID 85.  Finally, the

ALJ discredited Dr. Rahman's opinions because they are purportedly based on Plaintiff's

subjective complaints, and because Dr. Rahman's "records consist of only questionnaires where

he writes down one or two word answers."  *Id.*

The Court agrees with Plaintiff that the ALJ erred in assessing the weight accorded Dr.

Rahman's opinions.  PageID 1649-56.  Initially, the Court notes that the ALJ failed to mention

the concept of controlling weight when analyzing Dr. Rahman's opinions, or set forth the required

analysis.  *See Wilson*, 378 F.3d at 544.  Thus, the Court cannot determine whether the ALJ

undertook the "two-step inquiry" required when analyzing treating source opinions.  *See*

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376-78 (6th Cir. 2013); *Chrismon v. Colvin*, 531

F. App'x 893, 900 (10th Cir. 2013).  The lack of explanation regarding the "controlling weight

[analysis] hinders a meaningful review of whether the ALJ properly applied the treating-physician

rule that is at the heart of this regulation."  *Gayheart*, 710 F.3d at 377 (citations omitted).

Further, while the ALJ arguably touched upon the requisite controlling weight factors by

finding that Dr. Rahman's opinions are "not consistent with the other medical evidence and

opinions of record" and are based on "subjective complaints . . . rather than any objective

testing[,]" these reasons are not supported by the record.  PageID 85.  First, with regard to the

purported inconsistency between Dr. Rahman's opinions and Plaintiff's daily activities, the

undersigned finds that, absent meaningful explanation by the ALJ, it is unclear how Plaintiff's

ability to play with his children, watch television, or walk to a friend's house on one occasion, *see*

PageID 605, is inconsistent with Dr. Rahman's opinions.  *See Meece v. Barnhart*, 193 F. App'x

456, 465 (6th Cir. 2006) (finding "the fact that Plaintiff engages in minor life activities is not

inconsistent with disabling" limitations); *see also Gayheart*, 710 F.3d at 377.   Accordingly, the ALJ's perfunctory statement concerning Plaintiff's daily activities fails to provide a good reason for discounting the weight to be reasonably accorded Dr. Rahman's opinions.

Second, with regard to Dr. Yakhmi's findings, the ALJ fails to explain how such findings undermine Dr. Rahman's opinions.   While Dr. Yakhmi noted that Plaintiff is "able to focus," and has "fair" impulse control and ability to manage stress, he expressed no opinion as to how Plaintiff's mental impairments affect his ability to do so throughout an eight-hour workday.   *See* PageID 734-37.   Further, such notes do not touch on a number of areas of mental functioning in which Dr. Rahman found Plaintiff "markedly impaired" -- namely, his ability to: perform activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; work in coordination with or proximity to others; respond appropriately to criticism from supervisors; maintain socially appropriate behavior; and set realistic goals.   *See* PageID 345.   Accordingly, Dr. Yakhmi's records do not provide substantial evidence upon which the ALJ could rely to reduce the weight accorded Dr. Rahman's opinions.

Third, insofar as the ALJ found that Dr. Rahman "appears to base his findings on the subjective complaints of the claimant rather than any objective testing[,]" *see* PageID 85, the Sixth Circuit has "acknowledged the difficulty inherent in proving psychological disabilities."   *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 526 (6th Cir. 2014).   "[W]hen mental [impairments are] the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field . . ."   *Id.* (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)).   Here, Dr. Rahman, a psychiatrist, observed that Plaintiff was "agitated"; had "rapid" and "pressured" flow of conversation; showed signs of "severe anxiety";

10

had a "labile" mood and affect; and had decreased energy and motivation.   PageID 390, 435, 718. These findings, contrary to the ALJ's conclusion, are based upon Dr. Rahman's personal observations, not Plaintiff's subjective complaints.  *Id*.   Accordingly, the undersigned finds the ALJ's reasoning in this regard unsupported by substantial evidence.  *Cf. Keeton*, 583 F. App'x at 526 ("[e]ven if [the treating psychologist] had based his medical opinion solely on Plaintiff's self-reports . . . that likely would not have provided a sufficient basis for the ALJ's rejection of his medical opinion").

Finally, insofar as the ALJ critiqued the lack of detail in Dr. Rahman's functional capacity assessments, *see* PageID 85, this criticism is not relevant to a controlling weight determination and, instead, is one considered at the second step of the "analytically distinct," "two-step inquiry" required when analyzing treating source opinions.  *See* 20 C.F.R. § 416.927(c)(3) (stating that, after declining to afford controlling weight to a treating source, and in determining the ultimate weight given, "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion"); *see also Chrismon*, 531 F. App'x at 900.

Based on the foregoing, the ALJ's failure to give controlling weight to Dr. Rahman's opinions is not supported by substantial evidence and must be reversed.

### B.    Credibility

In his second assignment of error, Plaintiff contends that the ALJ improperly found him less than fully credible.  Doc. 10 at PageID 1656-58.  Finding remand warranted on other grounds, *see supra*, the undersigned makes no finding with regard to this alleged error.   Instead, Plaintiff's credibility -- along with all medical opinion evidence -- should be assessed by the ALJ anew on remand.

## IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits. Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

In this instance, evidence of disability is not overwhelming in light of conflicting opinions in the record concerning Plaintiff's functional limitations. *See, e.g.* PageID 84-85, 137-39, 154-57, 345. Instead, remand for further proceedings is necessary so the ALJ can reasonably and meaningfully weigh all opinion evidence, reassess Plaintiff's credibility, and determine Plaintiff's disability status anew.

## V.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

Date:   June 4, 2015                          s/ Michael J. Newman
                                              Michael J. Newman
                                              United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.   As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).   Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).